UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| LEROY JOHNSON | CIVIL ACTION |
|---|---|
| VERSUS | NO: 17-16868 |
| JAMES STEWART, ET AL. | SECTION: "A" (2) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 16)** filed by defendants Sergeant Thomas Mushinsky, Officer Devin Milazzo, and Officer Leonel Gonzales.[1] Plaintiff Leroy Johnson opposes the motion. The motion, submitted for consideration on December 5, 2018, is before the Court on the briefs without oral argument.

### I. BACKGROUND

Plaintiff Leroy Johnson filed this complaint pursuant to 42 U.S.C. § 1983 for various violations of his constitutional rights deriving from an encounter with officers of the Hammond Police Department on December 10, 2016. Johnson contends that the Defendants surrounded his vehicle without justification while he was parked in a relative's driveway, and ordered him from the vehicle at gunpoint. Johnson balked and attempted to leave the scene. The officers opened fire and Johnson was shot in the head, shoulder, and leg. Johnson was then arrested. Johnson claims that after the incident the officers

---

[1] All claims against James Stewart, the Chief of the Hammond Police Department, have already been dismissed. (Rec. Doc. 13).

attempted to cover up their unauthorized use of excessive force.[2]

Johnson contends that Sergeant Thomas Mushinsky, Officer Devin Milazzo, and Officer Leonel Gonzales violated his Fourth Amendment right to be free from the use of excessive force. Johnson also alleges a state law battery claim against the defendant officers.[3]

Defendants now move for summary judgment arguing that qualified immunity applies and bars all claims.

## II.      DISCUSSION

### a.  Governing Standards

To prevail on an excessive force claim, the plaintiff must show 1) injury, 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness of which was clearly unreasonable. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)). Inquiries regarding whether a use of force was clearly excessive or clearly unreasonable are often intertwined. *Id.* (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)). Excessive force claims are necessarily fact-intensive and whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Id.* (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). In making this determination, a court should consider the totality of the

---

[2] Johnson has never expounded upon his contention of a coverup except to complain that the officers have claimed that the shooting was justified. (Rec. Doc. 1, Complaint ¶ 15).

[3] In their reply memorandum, Defendants question whether Johnson adequately pleaded any state law claims at all. (Rec. Doc. 27, Reply at 7). Like most §1983 pleadings filed in federal court, the Complaint focuses on the federal claims upon which original jurisdiction is based. But Johnson undisputedly alleges a state law battery claim against the individual officers for the shooting. (Rec. Doc. 1, Complaint ¶ 16). Because Johnson did not amend his Complaint to join the City of Hammond as a defendant, (see Rec. Doc. 13, Order and Reasons at 3 n.3), respondeat superior liability for the battery claim is not at issue in this matter.

circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* (quoting *Graham v. O'Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation. *Id.*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

A qualified immunity defense alters the usual summary judgment burden of proof. *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018). Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.* (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)). The qualified immunity defense does not change, however, the requirement that the Court view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id.*

A two-step analysis applies when evaluating an official's qualified immunity defense on summary judgment. The Court must determine 1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right, and 2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Darden*, 880 F.3d at 727 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A right may be clearly established without a case directly on point but existing precedent must have placed the statutory or constitutional question beyond debate. *Id.* (quoting *Hanks*, 853 F.3d at 746-47). In the excessive force context, a constitutional violation is clearly established if no reasonable officer could believe the act was lawful. *Id.* (citing *Manis v. Lawson*, 585 F.3d

839, 846 (5th Cir. 2009)).

   **b. Analysis**

On the night in question the officers were attempting to locate two suspects who had

fled on foot from a stolen vehicle during a traffic stop initiated earlier that evening. The

suspects were believed to be a black male and a white male. The officers had heard on the

police radio that shell casings were found in the abandoned vehicle; they therefore

reasonably believed that the suspects might be armed.

It is undisputed that Johnson, who is a black male, was not the suspect that the

police were searching for that night. But in a classic case of being at the wrong place at the

wrong time, Johnson and a female companion were in his vehicle in the driveway of a

relative's home that night. (Rec. Doc. 1, Complaint ¶ 3). When Sergeant Mushinsky

approached the vehicle he noticed Johnson in the driver seat but in a fully reclined position.

(Rec. Doc. 16-2, Mushinsky affidavit ¶ 10). The passenger (white female) was also in a fully

reclined position. According to Mushinsky, Johnson leaned up from the seat but then went

back down out of view. (*Id.* ¶ 11). Johnson was not wearing a shirt even though it was cold

outside.[4] (*Id.* ¶ 14). Mushinsky perceived the situation as one in which the occupants of the

vehicle were trying to hide from the police. (*Id.* ¶ 14). Officer Milazzo's and Officer

Gonzales's affidavits are consistent with Mushinsky's affidavit on these points.

The officers surrounded the vehicle, drew their service weapons, pointed them at

Johnson and his companion, and demanded that they exit the vehicle. (Complaint, ¶¶ 4-5).

---

[4] Prior to encountering Johnson, one of the officers advised that the black male suspect was wearing
a white t-shirt when he was last seen. On his body camera audio, Mushinsky is heard commenting
that the suspect would not likely remove his shirt because it was cold outside.

According to Mushinsky, he was positioned at an angle on the front driver's side approximately five feet from the vehicle. (Rec. Doc. 16-2, Mushinsky affidavit ¶ 19). Milazzo and Gonzales were located on the passenger side of the vehicle. (Rec. Doc. 16-3, Milazzo affidavit ¶ 9; Rec. Doc. 16-4, Gonzales affidavit ¶ 12). The officers' body camera videos and the dash camera video from Officer Antoine Vicknair show that the officers were in uniform. The audio from Mushinsky's and Milazzo's body cameras demonstrates that the officers repeatedly yelled "hands" at the occupants of the vehicle.

Johnson does not dispute that he refused to comply with the officers' commands.[5] (Rec. Doc. 1, Complaint ¶ 6). The video evidence shows Johnson arguing with the officers although what he was saying is unintelligible. Johnson contends that he was reluctant to comply for fear of his safety and that of his companion. (*Id.*).

Johnson then placed the vehicle in drive and began to rapidly accelerate forward. Johnson alleges that he did this so that he could relocate to a more populated area before exiting the vehicle. (*Id.* ¶ 8). According to Mushinsky, Johnson turned the vehicle toward him and he believed that Johnson was intentionally trying to run him over. (Rec. Doc. 16-2, Mushinsky affidavit ¶¶ 21-22). Mushinsky tried to get out of the way but was limited in his movement by a nearby tree. (*Id.* ¶ 22). Mushinsky fired at the vehicle and he contends that he did so to protect himself. (*Id.* ¶ 23). Mushinsky points out that he did not fire at Johnson until after he began to accelerate toward him. (*Id.* ¶ 25). Mushinsky was forced to the

---

[5] Johnson did not submit any evidence in opposition to Defendants' motion, including an affidavit of his own. The Court will very generously assume, however, that Johnson would "testify" consistent with the unsworn and unverified allegations contained in his complaint and treat it as competent summary judgment evidence. The allegations from the Complaint do not necessarily contradict the video evidence but rather tell the story from Johnson's perspective, which is to be expected. Of course the qualified immunity analysis does not focus on the plaintiff's perspective but rather on the perspective and knowledge of the defendant-officer on the scene.

ground when the side of Johnson's vehicle made contact with him. (*Id.* ¶ 23). Mushinsky was treated at a local hospital and his knee injury required surgery.[6] (*Id.* ¶ 31).

Officer Milazzo attests that he had lost sight of Mushinsky as Johnson's vehicle moved forward and made the hard left turn. (Rec. Doc. 16-3, Milazzo affidavit ¶ 17). He was unsure if Mushinsky had moved out of the way or was underneath the vehicle. He believed that Johnson posed an immediate threat to the safety of Mushinsky so he fired his firearm through the rear windshield of the vehicle toward the driver's side. (*Id.* ¶¶ 20-21). Like Mushinsky, Milazzo attests that he did not fire his weapon until after Johnson's vehicle had moved forward toward Mushinsky. (*Id.* ¶ 22).

Similarly, Officer Gonzales's attests that when Johnson revved the engine and began to accelerate forward, he knew that Mushinsky was in front of the vehicle and he observed Johnson accelerate the vehicle toward Mushinsky. (Rec. Doc. 16-4, Gonzales affidavit ¶¶ 14-16). When Johnson accelerated the vehicle he observed Mushinsky put his hands out in front of the vehicle. He believed that Johnson posed an immediate threat to the safety of Officer Mushinsky. (*Id.* ¶¶ 17-18). Gonzales fired twice at the rear of Johnson's vehicle in order to prevent the car from striking Mushinsky. (*Id.* ¶ 19). Like the other officers, Gonzales did not fire until after Johnson's vehicle accelerated toward Mushinsky, and he did not hear

---

[6] Johnson argues that the allegation that he drove his vehicle in the direction of one of the officers is not supported by the video evidence. (Rec. Doc. 22, Opposition at 5). Mushinsky's description of the facts is consistent with the video evidence but the Court does note that the video footage is too dark to distinguish much of what occurred on Mushinsky's side of the vehicle. It is clear, however, that the vehicle veered to the left before the shots were fired and even if Johnson did this simply to turn left onto the roadway—in other words, he did not intend to run anyone over with his car—it does change Mushinsky's and the other officers' perception of the facts. The Court's own assessment of the video evidence is that the officers were not unreasonable in assuming that Johnson was trying to run him over, or at the very least acting recklessly and endangering the safety of the officers even if his intent was merely to flee the scene.

any gunshots until the car accelerated toward Mushinsky. (*Id.* ¶¶ 20-21). Gonzales attests that he saw the vehicle strike Mushinsky after he had fired his weapon. (*Id.* ¶ 22).

Officer Antoine Vicknair did not fire his weapon but he was present that night and his affidavit supports the other officers' versions of the events. (Rec. Doc. 16-5, Vicknair affidavit).

Johnson was shot three times (in the head, shoulder, and leg) as a result of his encounter with the officers. (Rec. Doc. 1, Complaint ¶ 9).

The Court is persuaded that Johnson has failed to create an issue of fact as to his claim that the officers violated his Fourth Amendment right to be free from the use of excessive force. Specifically, Johnson cannot establish the second and third prongs of an excessive force claim, *i.e.*, that the force used was clearly excessive, and if excessive, clearly unreasonable under the circumstances. Even though Johnson had committed no crime and was unarmed, the excessiveness inquiry focuses on the moment that deadly force is used. Johnson's contention that the officers approached the vehicle without cause to begin with misses the mark. The video evidence corroborates the officers' testimony that they reasonably believed that Johnson was going to run down Mushinsky. Johnson was non-compliant with the officers' instructions and he was affirmatively combative with them when he suddenly and without warning put the car in drive and revved the engine as he accelerated to the left, where Mushinsky was standing. Even if the Court assumes that Johnson never intended to hurt anyone and was simply trying to move the car to another area for his own safety, it remains that the officers were objectively reasonable in perceiving

that Johnson was a danger to Mushinsky.[7]  Johnson has failed to create an issue of fact that

his constitutional rights were violated by the use of potentially deadly force. Defendants

Mushinsky, Milazzo, and Gonzales are entitled to qualified immunity on the federal claims.

The motion for summary judgment is therefore granted as to all federal claims.

### c.  State law claims

Defendants contend that the state law tort claim should be dismissed as being

merely duplicative of the federal excessive force claim. Alternatively, Defendants argue that

the same qualified immunity analysis used for the federal claim applies to the state law

claims.

The Complaint provides no jurisdictional allegations to suggest that a federal court

can exercise original jurisdiction over the state law claims. The state law claims are

therefore subject to statutory supplemental jurisdiction. 28 U.S.C. § 1367(a). The Court has

discretion to decline jurisdiction over those claims now that all federal claims are being

dismissed. *See* 28 U.S.C. § 1367(c)(3). The viability of the state law claims will be judged

under state law standards, *see Miller v. Village of Hornbeck*, 65 So. 3d 784 (La. App. 3d Cir.

2011), not under federal standards. No trial date is scheduled at this time, the case has

been pending in federal court for less than a year, and this Court does not have an "intimate

familiarity" with the state law claims being asserted. *Batiste v. Island Recs., Inc.*, 179 F.3d

217, 228 (5th Cir. 1999). The Court therefore declines to entertain the state law claims and

---

[7] To be clear, the objective video evidence is more consistent with the officers' perception of the incident than with any suggestion that Johnson was simply trying to move his vehicle into a safer area. The video suggests that Johnson floored the accelerator as he attempted to pull away to the left onto the road. Even if he was not acting intentionally to harm Mushinsky, a point that is irrelevant to the analysis anyway, the manner in which he pulled away from the scene would leave the officers nonetheless with the reasonable perception that Mushinsky was in danger.

dismisses them without prejudice.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 16)** filed by defendants Sergeant Thomas Mushinsky, Officer Devin Milazzo, and Officer Leonel Gonzales is **GRANTED.** All federal claims arising out of the December 10, 2016 incident are dismissed with prejudice as to these defendants. The motion is **DENIED** as to any state law claims against these same defendants and those claims are **DISMISSED WITHOUT PREJUDICE** because the Court declines jurisdiction over them.

December 10, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE